## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

In re:                                         )
                                               )
CHARLES  DEMPSY MILES, JR.                     )        Case No. 05-14002 ABC
BARBARA JEAN MILES                             )
                                               )
      Debtors.                            )

---

### PETITIONER'S WITNESSES AND EXHIBITS

---

Wells Fargo Bank N.A. Successor by Merger to Wells Fargo Bank Minnesota, NA, as Trustee f/k/a Norwet Bank Minnesota, N.A., As Trustee for the Registered Holders of Terwin Mortgage Trust, Asset-Backed Certificates, Series TMTS 3002-8HE, by its undersigned counsel, hereby designates its list of witnesses and exhibits as follows:

### LIST OF WITNESSES

1. Ocwen Loan Servicing, for Wells Fargo Bank N.A. Successor by Merger to Wells Fargo Bank Minnesota, NA, as Trustee f/k/a Norwet Bank Minnesota, N.A., As Trustee for the Registered Holders of Terwin Mortgage Trust, Asset-Backed Certificates, Series TMTS 3002-8HE, its servicing agent.  Ocwen may testify to all matters necessary for proof of Wells Fargo's Motion for Relief, and for any foundation, authentication, rebuttal or impeachment.

2. All witnesses necessary for foundation, authentication, rebuttal, or impeachment.

### LIST OF EXHIBITS

1. Lost Note Affidavit

2. Lost Instrument Bond

3. Deed of Trust, with Rider Attachments

4. Payment History

5. Valuation/Foreclosure Order

6. All exhibits necessary for foundation, authentication, rebuttal, or impeachment.

Dated: December 2, 2009

Respectfully submitted,

HELLERSTEIN AND SHORE, P.C.

*The original signature of counsel Is on file at Hellerstein and Shore, P.C.*
By: /s/ Scott D. Toebben
Scott D. Toebben, #19011
Attorneys for Respondent Ocwen
5347 S. Valentia Way, Suite 100
Greenwood Village, CO 80111
(303) 573-1080
(303) 571-1271 (facsimile)

## CERTIFICATE OF MAILING

I hereby certify that on this 2nd day of December, 2009, I mailed and e-filed the foregoing List of Witnesses and Exhibits, via electronic filing on Pacer, and by hand delivery to counsel at the hearing on December 3, 2009 at 9:00 a.m., or by U.S. Mail Postage Prepaid, to the following:

Barry Satlow
1951 Vista Drive
Boulder, Colorado 80304

Jeffrey L. Hill, Trustee
11911 S. Parker Road, Ste 207
Parker, Colorado 80134

United States Trustee
999 18th Street, Ste 1551
Denver, Colorado 80202

/s/ Dana M. Arvin

Prepared by: Maria Alvarez
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: 561-682-8835
723316804800
AT-12

## LOST NOTE AFFIDAVIT

Before me, Denise A. Marvel, personally appeared who, upon being duly cautioned and sworn deposes and sayeth as a follows:

1.    That he/she is the Manager of Document Control and Contract Management for **FINANCE AMERICA, LLC, DBA FINAM, LLC**, BY IT'S ATTORNEY-IN-FACT, OCWEN LOAN SERVICING, LLC.

2.    **WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A., AS TRUSTEE F/K/A NORWEST BANK MINNESOTA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF TERWIN MORTGAGE TRUST, ASSET-BACKED CERTIFICATES, SERIES TMTS 2003-8HE** is the owner of that certain loan or obligation evidenced by a certain Promissory Note, and Deed of Trust/Mortgage identified as follows:

Original Principal Amount: $ 620,000.00
Date of Deed of Trust/Mortgage: APRIL 4, 2003
Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR FINANCE AMERICA, LLC, DBA FINAM, LLC
Recording Information: INSTRUMENT NO: 2440120
Recording Date: MAY 13, 2003
Interest Rate: _____ % Maturity Date: _____
Property Address: 4446 N. 109TH ST, LAFAYETTE, CO
Official Records of **BOULDER** county.

3.    That the original Promissory Note evidencing the loan was duly executed and delivered by the maker thereof, but has been lost or misplaced. The obligation it represents has not been paid, transferred, pledged, or hypothecated. The purposes of this affidavit is to establish such facts.

FURTHER AFFIANT SAYETH NOT

                             **FINANCE AMERICA, LLC, DBA FINAM, LLC
BY IT'S ATTORNEY-IN-FACT
OCWEN LOAN SERVICING, LLC**

                             By: _____

                             Name: Denise A. Marvel
                             Title:    Manager of Document Control
                                      and Contract Management

State of Florida      }
                    }SS
County of Palm Beach  }

Sworn and subscribed before me this 25TH day of FEBRUARY 2009. by Denise A. Marvel, Manager of Document Control and Contract Management of **OCWEN LOAN SERVICING, LLC. A LIMITED LIABILITY COMPANY, BY IT'S ATTORNEY-IN-FACT FOR FINANCE AMERICA, LLC, DBA FINAM, LLC**, on behalf of the company. He/She is personally known to me.



_____
Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
Leticia N. Arias
Commission #DD737904
Expires:  NOV. 29, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

Ln# 331-68048

#12

## THE TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

### LOST INSTRUMENT BOND

BOND NO. _105196469-5_

PREMIUM: **$8,370.00**

KNOW ALL MEN BY THESE PRESENTS, that we, **Wells Fargo Bank, N.A.,** successor by merger to **Wells Fargo Bank Minnesota, N.A.,** as Trustee f/k/a **Norwest Bank Minnesota, N.A.,** as Trustee for the registered holders of **Terwin Mortgage Trust, Asset-Backed Certificates, Series TMTS 2003-8HE.,**

as Principal and THE TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Connecticut, as Surety, are held and firmly bound unto the Public Trustee in and for the county of **Boulder,** State of Colorado, in the penal sum of (1-1/2 times orig. note amount) **Nine Hundred Thirty Thousand and No/100----**Dollars (**$930,000.00**) for the payment of which well and truly to be made we bind ourselves, our heirs, executors, legal representatives, successors and assigns, jointly severally and firmly by these presents.

SIGNED, sealed and dated this _1st_ day of _May_ 20 _09_.

THE CONDITION OF THIS OBLIGATION IS SUCH THAT WEREAS, **Charles D. Miles,** Executed a note in the amount of (orig. note amount) **Six Hundred Twenty Thousand and No/100--**Dollars (**$620,000.00**) secured by Deed of Trust for the use and benefit of **Finance America, LLC dba FinAm, LLC,** dated, **April 4, 2003,** and recorded on **May 13, 2003,** Reception No. **2440120,** in the office of the County Clerk and Recorder of the County of **Boulder,** State of Colorado and

WHEREAS, the said note was secured by Deed of Trust on the following described property:

**4446 N. 109th Street, Lafayette, CO  80026-9660**

And,

WHEREAS, the Principal is foreclosing on the deed of trust, but the original note has been lost, misplaced or destroyed and,

WHEREAS, the Principal is desirous of having said deed of trust foreclosed by the Public Trustee.

NOW , THEREFORE, if the said Principal shall keep harmless and indemnify the said Public Trustee, or his successors in office, from any action or actions at law, suit, or suits in equity of, or concerning said note, then this obligation shall be null and void; otherwise to remain in full force and effect.

Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A., as Trustee f/k/a Norwest Bank Minnesota, N.A., as Trustee for the registered holders of Terwin Mortgage Trust, Asset-Backed Certificates, Series TMTS 2003-8HE.By Ocwen Loan Servicing, LLC Its Attorney in Fact

_____
Kevin M. Jackson, Manager

THE TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

BY: _____
Donna L. Peterson, Attorney-in-Fact

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# POWER OF ATTORNEY

**TRAVELERS**

| | |
|---|---|
| Farmington Casualty Company | St. Paul Guardian Insurance Company |
| Fidelity and Guaranty Insurance Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company |
| Seaboard Surety Company | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |

Attorney-In Fact No.   219263                     Certificate No. 002033098

KNOW ALL MEN BY THESE PRESENTS: That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, that Farmington Casualty Company, Travelers Casualty and Surety Company, and Travelers Casualty and Surety Company of America are corporations duly organized under the laws of the State of Connecticut, that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Donna L. Peterson

of the City of ____Denver_____, State of _____Colorado_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____30th_____ day of ____October_____, _____2007_____.

| | |
|---|---|
| Farmington Casualty Company | St. Paul Guardian Insurance Company |
| Fidelity and Guaranty Insurance Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company |
| Seaboard Surety Company | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |

State of Connecticut
City of Hartford ss.

By: _George W. Thompson_
George W. Thompson, Senior Vice President

On this the ____30th____ day of ____October____, ____2007____, before me personally appeared George W. Thompson, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2011.

_Marie C. Tetreault_
Marie C. Tetreault, Notary Public

58440-5-07 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, Kori M. Johanson, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Companies this __1st__ day of __May__, 20__09__.

Kori M. Johanson, Assistant Secretary

         

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.



**2440120**
Page 1 of 25
05/13/2003 09 50A
Boulder County Clerk   CO DT          R 126 00     D 0 00

*TWO38C*
*30000 9101*
*W/D· OCWEN*

Return To:
Finance America, LLC,
dba FinAm, LLC
P.O. BOX 16637
Irvine, Ca 92623-6637

Prepared By:
Karen Cornell
16802 Aston Street
Irvine, CA 92606

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN    100052300362465105

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    APRIL  04, 2003
together with all Riders to this document.
(B) "Borrower" is
CHARLES D. MILES

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Finance America, LLC, dba FinAm, LLC

Lender is a        Limited Liability Company

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3006  1/01

VMP ®-6A(CO) (0008)
Page 1 of 16                      Initials _____
VMP MORTGAGE FORMS - (800)521-7291

MEAL

# RECORD 2nd

*243808*

2440120
Page 2 of 25
05/12/2003 09 50A
Boulder County Clerk  CO DT          R 126 00     D 0 00

organized and existing under the laws of          Delaware
Lender's address is    16802 Aston Street Irvine, CA 92606

**(D) "Trustee"** is the Public Trustee of          BOULDER          County, Colorado.
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated          APRIL 04, 2003
The Note states that Borrower owes Lender
SIX HUNDRED TWENTY THOUSAND AND NO/100                                    Dollars
(U.S. $     620,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      MAY 01, 2033
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Legal Description |
| | | ☒ Prepayment Rider |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CO) (0005)                          Page 2 of 16                    Initials _Au_                    Form 3006  1/01
MABR

2440120
Page 3 of 28
06 13/2003 09 50A
Boulder County Clerk   CO DT          R 126 00      D 0 00

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|            COUNTY             |   of   |         BOULDER              | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

follows.

**Lot 1, Meadow Creek Farm N.U.P.U.D., County of Boulder, State of Colorado.**

Parcel ID Number:       146515011001                which currently has the address of
                                    4446 N 109TH ST                                    [Street]
                        LAFAYETTE           [City], Colorado   80026-9660 [Zip Code]
("Property Address"):   4446 N 109TH ST, LAFAYETTE, CO 80026-9660

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(CO) (0005)                      Page 3 of 15           Initials                    Form 3006   1/01
MADO

2440120
Page  J of 25
05/13/2008 09 50A
Boulder County Clerk   CO DT         R 126 00      D 0 00

' BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow

2440120
Page 5 of 25
05·13·2008 09 50A
Boulder County Clerk  CO DT        R 126 00      D 0 00

Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless

2440120
Page 6 of 25
05 '3 2003 09 50A
Boulder County Clerk   CO DT          R 126 00     0 0 00

Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

-6A(CO) (0005)
MAIM

Page 6 of 15

Initials: ___

Form 3006  1/01

2440120
Page 7 of 25
05/13 2003 09 50A
Boulder County Clerk   CO 0    R 126.00   D 0 00

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

2440120
Page 8 of 25
05 '13 2003 09 50A
Boulder County Clerk  CO DT        P 126 00        D 0 00

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source

2440120
Page 9 of 25
05 13 2003 09 50A
Boulder County Clerk CO DT      R 126 CO      0 0 00

of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials _Qun_

-6A(CO) (0005)      Page 9 of 15      Form 3006   1/01
MAOC

2440120
Page   10 of 25
CE  13 2009 09 50A
Boulder County Clerk   CO DT       R 126 00        D 0 00

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's

Initials: _Cm_

-6A(CO) (0005)
MAPP                                  Page 10 of 15                                  Form 3006   1/01

2440120
Page 11 of 26
OE 13 2003 09 50A
Boulder County Clerk  CO DT
R 126 00  D 0 00

notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)

2440120
Page 12 of 25
05-13-2003 09 50A
Boulder County Clerk  CO DT        R 126 CO     D 0 00

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any

-6A(CO) (0005)
MATB

Page 12 of 16

Initials ____

Form 3006  1/01

2440120
Page  13 of 25
05·13·2003 09:50A
Boulder County Clerk  CO DT          R 126 CO      D 0.00

Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly canceled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

2440120
Page  14 of 25
CR  13  2003 09 509
Boulder County Clerk   CO DT        R 126 00      0 0 00

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            CHARLES D. MILES              -Borrower

_____          _____ (Seal)
                                                                         -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                         -Borrower

-6A(CO) (0006)                    Page 14 of 16              Form 3006   1/01
MAWM

2440120
Page  15 of 25
05-13-2003 09:50A
Boulder County Clerk  CO D T          P 126 00          D 0 00

STATE OF COLORADO,                     *Jefferson*          County ss:

The foregoing instrument was acknowledged before me this *4Th* day of *April* , *2003*

by *Charles D. Miles*

Witness my hand and official seal.

My Commission Expires: *10/10/2006*

_____
Notary Public



My Commission Expires 10/10/2006

**2440120**
Page 16 of 25
05 13.2003 09 50A
Boulder County Clerk  CO CT      R 126 00      D 0 00

RECORDING REQUESTED BY, AND
WHEN RECORDED MAIL TO:

Finance America, LLC, dba FinAm, LLC
P.O. Box 16637
Irvine, Ca 92623-6637

*(Space above this line for Recorder's use)*

**PREPAYMENT RIDER**   MIN  100052300362465105
DATE:   04/04/03

FOR VALUE RECEIVED, the undersigned ("Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed of even date herewith (the "Security Instrument") executed by Borrower, as trustor, in favor of

   Finance America, LLC, dba FinAm, LLC                                   ("Lender"),
as beneficiary, and also into that certain promissory note (the "Note") of even date herewith executed by Borrower in favor of Lender. To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Prepayment Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

Section   5   of the Note is amended to read in its entirety as follows:

**MULTISTATE**
(09/10/96)

**FIRST MORTGAGE**

1196181 (0203)

  ATUX

Page 1 of 2

VMP MORTGAGE FORMS - (800)521-7291

2440120
Page 1 of 25
03 13 2003 09 50A
Boulder County Clerk  CO 0T      R 126 00      D 0 00

**" 5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of principal at any time before they are due, together with accrued interest. When I make a prepayment, I will tell the Note Holder in writing that I am doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. If within  TWO        (  2   ) years from the date of execution of the Security Instrument (as defined above) I make a full prepayment or partial prepayment(s), I will at the same time pay to the Note Holder a prepayment charge. An amount not exceeding twenty percent (20%) of the original principal amount may be prepaid in any twelve-month period without penalty. A prepayment charge will be imposed on any amount prepaid in any twelve-month period in excess of twenty percent (20%) of the original principal amount of the loan which charge shall not exceed an amount equal to the payment of six months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

IN WITNESS WHEREOF, the Borrower has executed this Prepayment Rider on the                    day of

_____         _____
Borrower    CHARLES D. MILES                     Borrower

_____         _____
Borrower                                         Borrower

_____         **MULTISTATE**
**FIRST MORTGAGE**                                               (09/10/96)

1196181 (0203)                          Page 2 of 2

ATUY                                    LOAN ID: 0036246510

**2440120**
Page 18 of 26
05-13-2003 09 50A
Boulder County Clerk  CO DT   R 126 00   D 0 00

Return To:
Finance America, LLC, dba FinAm, LLC
P.O. Box 16637
Irvine, Ca 92623-6637

MIN  100052300362465105

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this       4th     day of          APRIL , 2003         ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
Finance America, LLC, dba FinAm, LLC

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

4446 N 109TH ST, LAFAYETTE, CO 80026-9660
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials 
Page 1 of 4                                        Form 3170 1/01
VMP-57R (0008)                    VMP MORTGAGE FORMS - (800)521-7291

MCAW



2440120
Page 19 of 25
05/19 2003 09 50A
Boulder County Clerk  CO CT        R 126 00        D 0 00

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

MGAX

2440120
Page 26 of 25
05 3 2003 09 50A
Boulder County Clerk   CO DT          R 126 00        D 0 00

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _Cm_

MCAY

2440120
Page  21 of 25
06/13/2008 09 50A
Boulder County Clerk  CO DT        R 126 00     0 0 00

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
CHARLES D. MILES              -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                -Borrower

VMP-57R (0008)                    Page 4 of 4                    Form 3170 1/01

MCAZ

**2440120**
Page  22 of 25
05-13-2003 09 50A
Boulder County Clerk  CO DT          R 126 00          D 0 00

RETURN RECORDED DOC TO:
Finance America, LLC, dba FinAm, LLC
P.O. Box 16637
Irvine, Ca 92623-6637

MIN  100052300362465105

# ADJUSTABLE RATE RIDER
**(LIBOR Index - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this     4th     day of APRIL , 2003         , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed
to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
Finance America, LLC, dba FinAm, LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

4446 N 109TH ST, LAFAYETTE, CO 80026-9660
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     7.740                    %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of   MAY  01, 2005         , and on that
day every sixth month thereafter. Each date on which my interest rate could change is called a "Change
Date."

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT

VMP-815R (0008)          Form 3192 1/01
Page 1 of 4          Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

MGMW

2440120
Page 29 of 29
05/13/2003 09 59A
Boulder County Clerk    CO DT          R 126.00      0.0.00

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND NO/100                               percentage points (            6.000        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.740          % or less than        7.740        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.740        %.       My interest rate will never be lower than the initial interest rate stated in Paragraph A of this Rider.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Initials: _____

-815R (0008)                                Page 2 of 4                                Form 3192 1/01

MGMX

2440120
Page 24 of 25
05/13 2003 09 50A
Boulder County, Clerk  CO OT          R 126 00       D 0 00

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

-815R (0008)                          Page 3 of 4                          Form 3192 1/01

MGMY

2440120
Page  25 of 25
05/13.2003 09 50A
Boulder County Clerk  CO DT          R 126 00     0 0 00

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
CHARLES D. MILES          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                              -Borrower

VMP®-815R (0008)                Page 4 of 4                Form 3192 1/01

MGMZ

Loan Number: 33168048                    August 26, 2009

Dear Borrower(s):

As you requested, the following is a breakdown of the payoff funds
due on or before 08/26/2009

| Description | Amount Due |
|---|---|
| Principal | 615,841.58 |
| Interest | 330,637.48 |
| Late Charges | 11,549.97 |
| Returned Check Fee | 20.00 |
| Satisfaction Cost | 21.00 |
| Payoff Fee | 20.00 |
| Bankruptcy Fee | 150.00 |
| Prior Servicer Fees | 8.50 |
| Bankruptcy Expense | 150.00 |
| Certified Mail Cost | 10.99 |
| Title Search | 1,754.20 |
| Lost Note Affidavit | 8,470.00 |
| Foreclosure Cost | 36.00 |
| Act FC Fees Incurred Not Invoiced | 100.00 |
| Property Valuation Expense | 1,071.00 |
| Title Report Fee | 480.00 |
| Property Inspection Fee | 115.50 |
| Escrow Advance | 55,516.90 |

| Total Amount Due | 1,025,953.12 |
|---|---|

| | |
|---|---|
| Next Due Date | 03/01/2004 |
| Quoted Date | 08/26/2009 |
| Payoff Quote Expiration Date | 09/26/2009 |
| Grace Period End Date | 08/17/2009 |
| Original Principal Balance | 620,000.00 |
| Interest Per Diem | 132.41 |

| From | To | Interest Amount | Interest Rate | Balance | Daily Per Diem | #Days |
|---|---|---|---|---|---|---|
| 02/01/2004 | 02/29/2004 | 3,972.18 | 7.74000 | 615,841.58 | 132.40594000 | 30 |
| 03/01/2004 | 03/31/2004 | 3,969.10 | 7.74000 | 615,376.29 | 132.30590200 | 30 |
| 04/01/2004 | 04/30/2004 | 3,966.06 | 7.74000 | 614,908.00 | 132.20522000 | 30 |
| 05/01/2004 | 05/31/2004 | 3,963.12 | 7.74000 | 614,436.65 | 132.10388800 | 30 |
| 06/01/2004 | 06/30/2004 | 3,960.06 | 7.74000 | 613,962.34 | 132.00190300 | 30 |
| 07/01/2004 | 07/31/2004 | 3,956.98 | 7.74000 | 613,484.93 | 131.89926000 | 30 |
| 08/01/2004 | 08/31/2004 | 3,953.88 | 7.74000 | 613,004.44 | 131.79595500 | 30 |
| 09/01/2004 | 09/30/2004 | 3,950.78 | 7.74000 | 612,520.85 | 131.69198300 | 30 |
| 10/01/2004 | 10/31/2004 | 3,947.62 | 7.74000 | 612,034.14 | 131.58734000 | 30 |
| 11/01/2004 | 11/30/2004 | 3,944.46 | 7.74000 | 611,544.29 | 131.48202200 | 30 |
| 12/01/2004 | 12/31/2004 | 3,941.28 | 7.74000 | 611,051.26 | 131.37602300 | 30 |
| 01/01/2005 | 01/31/2005 | 3,938.08 | 7.74000 | 610,555.09 | 131.26934400 | 30 |
| 02/01/2005 | 02/28/2005 | 3,934.86 | 7.74000 | 610,055.70 | 131.16197600 | 30 |
| 03/01/2005 | 03/31/2005 | 3,931.62 | 7.74000 | 609,553.08 | 131.05391400 | 30 |
| 04/01/2005 | 04/30/2005 | 3,928.35 | 7.74000 | 609,047.24 | 130.94515700 | 30 |
| 05/01/2005 | 05/31/2005 | 4,734.20 | 9.37500 | 608,538.12 | 158.47346800 | 30 |
| 06/01/2005 | 06/30/2005 | 4,751.27 | 9.37500 | 608,162.72 | 158.37570800 | 30 |
| 07/01/2005 | 07/31/2005 | 4,748.32 | 9.37500 | 607,784.39 | 158.27718500 | 30 |
| 08/01/2005 | 08/31/2005 | 4,745.34 | 9.37500 | 607,403.11 | 158.17789300 | 30 |
| 09/01/2005 | 09/30/2005 | 4,742.33 | 9.37500 | 607,018.65 | 158.07782600 | 30 |
| 10/01/2005 | 10/31/2005 | 4,739.31 | 9.37500 | 606,631.38 | 157.87697400 | 30 |
| 11/01/2005 | 11/30/2005 | 5,178.31 | 10.25000 | 606,241.29 | 172.61036700 | 30 |
| 12/01/2005 | 12/31/2005 | 5,175.47 | 10.23000 | 605,808.42 | 172.51859200 | 30 |
| 01/01/2006 | 01/31/2006 | 5,172.60 | 10.25000 | 605,372.71 | 172.42000800 | 30 |
| 02/01/2006 | 02/28/2006 | 5,169.71 | 10.25000 | 605,234.13 | 172.32360600 | 30 |
| 03/01/2006 | 03/31/2006 | 5,166.79 | 10.25000 | 604,892.66 | 172.22698200 | 30 |
| 04/01/2006 | 04/30/2006 | 5,163.85 | 10.25000 | 604,848.27 | 172.12832700 | 30 |
| 05/01/2006 | 05/31/2006 | 5,402.45 | 11.12500 | 604,200.94 | 186.71487400 | 30 |
| 06/01/2006 | 06/30/2006 | 5,398.70 | 11.12500 | 603,904.32 | 186.62321000 | 30 |
| 07/01/2006 | 07/31/2006 | 5,595.92 | 11.12500 | 603,604.98 | 186.53069600 | 30 |
| 08/01/2006 | 08/31/2006 | 5,593.12 | 11.12500 | 603,302.80 | 186.43732400 | 30 |
| 09/01/2006 | 09/30/2006 | 5,590.29 | 11.12500 | 602,997.85 | 186.34302600 | 30 |
| 10/01/2006 | 10/31/2006 | 5,587.44 | 11.12500 | 602,690.07 | 186.24787300 | 30 |
| 11/01/2006 | 11/30/2006 | 5,710.06 | 11.37500 | 602,379.44 | 190.33517000 | 30 |
| 12/01/2006 | 12/31/2006 | 5,707.22 | 11.37500 | 602,080.32 | 190.24065700 | 30 |
| 01/01/2007 | 01/31/2007 | 5,704.36 | 11.37500 | 601,778.36 | 190.14524600 | 30 |
| 02/01/2007 | 02/28/2007 | 5,701.47 | 11.37500 | 601,473.54 | 190.04893100 | 30 |
| 03/01/2007 | 03/31/2007 | 5,698.55 | 11.37500 | 601,165.83 | 189.95170300 | 30 |
| 04/01/2007 | 04/30/2007 | 5,695.61 | 11.37500 | 600,855.20 | 189.85355300 | 30 |
| 05/01/2007 | 05/31/2007 | 5,692.63 | 11.37500 | 600,541.63 | 189.75447300 | 30 |
| 06/01/2007 | 06/30/2007 | 5,689.63 | 11.37500 | 600,225.08 | 189.65445200 | 30 |
| 07/01/2007 | 07/31/2007 | 5,686.60 | 11.37500 | 599,905.53 | 189.55348300 | 30 |
| 08/01/2007 | 08/31/2007 | 5,683.55 | 11.37500 | 599,582.95 | 189.45155700 | 30 |
| 09/01/2007 | 09/30/2007 | 5,680.46 | 11.37500 | 599,257.32 | 189.34866700 | 30 |
| 10/01/2007 | 10/31/2007 | 5,677.34 | 11.37500 | 598,928.60 | 189.24480100 | 30 |
| 11/01/2007 | 11/30/2007 | 5,549.49 | 11.12500 | 598,596.76 | 184.98302700 | 30 |
| 12/01/2007 | 12/31/2007 | 5,546.24 | 11.12500 | 598,246.63 | 184.87476300 | 30 |
| 01/01/2008 | 01/31/2008 | 5,542.96 | 11.12500 | 597,892.85 | 184.76549300 | 30 |
| 02/01/2008 | 02/29/2008 | 5,539.66 | 11.12500 | 597,535.99 | 184.65521900 | 30 |
| 03/01/2008 | 03/31/2008 | 5,536.32 | 11.13500 | 597,175.83 | 184.54392800 | 30 |
| 04/01/2008 | 04/30/2008 | 5,532.95 | 11.12500 | 596,812.33 | 184.43158800 | 30 |
| 05/01/2008 | 05/31/2008 | 5,032.51 | 10.12500 | 596,445.46 | 167.75028600 | 30 |
| 06/01/2008 | 06/30/2008 | 5,028.80 | 10.12500 | 596,075.42 | 167.62632400 | 30 |
| 07/01/2008 | 07/31/2008 | 5,025.05 | 10.12500 | 595,561.47 | 167.50172000 | 30 |
| 08/01/2008 | 08/31/2008 | 5,021.28 | 10.12500 | 595,114.17 | 167.37586000 | 30 |
| 09/01/2008 | 09/30/2008 | 5,017.47 | 10.12500 | 594,662.90 | 167.24894100 | 30 |
| 10/01/2008 | 10/31/2008 | 5,013.63 | 10.12500 | 594,207.82 | 167.12094800 | 30 |
| 11/01/2008 | 11/30/2008 | 4,947.91 | 10.00000 | 593,748.90 | 166.93025000 | 30 |
| 12/01/2008 | 12/31/2008 | 4,943.97 | 10.00000 | 593,276.38 | 164.78989400 | 30 |
| 01/01/2009 | 01/31/2009 | 4,940.00 | 10.00000 | 592,799.92 | 164.66664400 | 30 |
| 02/01/2009 | 02/28/2009 | 4,936.00 | 10.00000 | 592,319.49 | 164.53319200 | 30 |
| 03/01/2009 | 03/31/2009 | 4,931.96 | 10.00000 | 591,835.06 | 164.39862800 | 30 |
| 04/01/2009 | 04/30/2009 | 4,927.89 | 10.00000 | 591,346.59 | 164.26294200 | 30 |
| 05/01/2009 | 05/31/2009 | 4,431.41 | 9.00000 | 590,854.05 | 147.71351300 | 30 |
| 06/01/2009 | 06/30/2009 | 4,427.03 | 9.00000 | 590,271.09 | 147.56777300 | 30 |
| 07/01/2009 | 07/31/2009 | 4,422.63 | 9.00000 | 589,683.75 | 147.42093600 | 30 |
| 08/01/2009 | 08/25/2009 | 3,681.83 | 9.00000 | 589,092.01 | 147.27300300 | 25 |

PAYMENT INFORMATION